Jonathan E. JAFFE, Plaintiff,

v.

**FEDERAL RESERVE BANK OF CHICAGO, et al., Defendants.**

No. 83 C 7223.

United States District Court, N.D. Illinois, E.D.

June 5, 1984.

See also, 100 F.R.D. 443.

Solomon Frydman, Barry E. Morgen, Chicago, Ill., for plaintiff.

M. Kathleen O'Brien, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Jonathan E. Jaffe ("Jaffe") has filed an amended complaint (the "Complaint") against the Federal Reserve Bank of Chicago ("Bank") and its alleged agents R.M. Scheider ("Scheider"), R.P. Bush ("Bush") and Andrew M. Cook ("Cook") in connection with Bank's termination of Jaffe's employment. Jaffe, a white man, alleges he was terminated as a direct result of a complaint by a black co-worker that he had made racist remarks in her presence. Defendants now move pursuant to Fed.R. Civ.P. ("Rule") 12(b)(6) to dismiss each of the Complaint's four counts for various reasons. For the reasons stated in this memorandum opinion and order, defendants' motion is granted as to Count I and III and denied as to Counts II and IV.

### Count I

■ Count I alleges defendants deprived Jaffe of his property interest in continued employment without due process of law.[1] Existence of such a property interest often is an inappropriate issue for resolution on a motion to dismiss. See, e.g., *Folak v. Sheriff's Office*, 579 F.Supp. 1338, 1340–41 (N.D.Ill.1984). Contracts, statutes or the type of established grievance procedure on which Jaffe relies may constitute "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" (*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Here however a statute resolves the issue as a matter of law. Under 12 U.S.C. § 341, Fifth each Federal Reserve Bank has the power "to dismiss at pleasure ... officers and employees." Courts uniformly hold that statute precludes the enforcement of any employment contract against a

1. That at least is defendants' interpretation of Count I, and it is a fair one. Jaffe's responsive memorandum, rather than defending Count I as such, blurs the distinction between it and Count II, which alleges deprivation of Jaffe's liberty to seek other employment without due process. If the counts allege the distinct theories indicated, the analysis in the text of this opinion holds. If in fact the two counts allege the same theory, no harm is done because Count I may be dismissed as duplicative of Count II.

Federal Reserve Bank and prevents the development of any reasonable expectation of continued employment. *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1098–1100 (9th Cir.1981); *Obradovich v. Federal Reserve Bank of New York*, 569 F.Supp. 785, 790–91 (S.D.N.Y. 1983); *Armano v. Federal Reserve Bank of Boston*, 468 F.Supp. 674 (D.Mass.1979). Count I must be dismissed with prejudice.

### Count II

■ Count II alleges defendants, acting without due process of law, deprived Jaffe of his liberty interest in seeking other employment. As is required on motions to dismiss (*Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984)), the following allegations are taken as true and considered in the light most favorable to Jaffe:

1. Bank's personnel files pertaining to Jaffe state he was terminated because of a "racial incident" and his "inability to get along with others" (Count II ¶ 29).

2. That information is false (*id.* ¶ 30).

3. That information has been released to Illinois' Division of Unemployment Compensation (*id.* ¶ 29).

4. United States Naval Reserve Intelligence Program (the "Naval Reserve"), a prospective employer, desires to obtain the contents of Jaffe's file. Unless Bank is enjoined from maintaining or releasing that information, the Naval Reserve will obtain that information and deny Jaffe employment on that basis (*id.* ¶¶ 25–28).

Defendants argue those allegations do not indicate the presence of sufficient stigma, publication or tangible harm to support the existence of a liberty interest.

On the issues of publication and tangible harm this case is controlled by the same analysis as in *Zurek v. Hasten*, 553 F.Supp. 745, 746–48 (N.D.Ill.1982). In *Zurek* the existence of stigmatizing information in plaintiff's government personnel file, coupled with the prospect of dissemination of that information to all government agencies requesting it, was sufficient to establish both publication and tangible harm on a motion to dismiss. Rule 12(b)(6) principles require this Court to draw the inference Jaffe has been similarly foreclosed from all federal government employment opportunities, and that is sufficient to implicate constitutionally protected liberty interests under *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir.1978). If anything Jaffe's position is stronger than that of the plaintiff in *Zurek*, because Jaffe actually alleges imminent publication to a prospective employer and foreclosure of employment,[2] while publication to a particular prospective employer had to be inferred from the allegations in *Zurek*.

*Smith v. Board of Education*, 708 F.2d 258 (7th Cir.1983), decided after *Zurek*, controls whether the adverse publicity Jaffe alleges is sufficiently stigmatizing to implicate protected liberty interests. Under *Smith*, 708 F.2d at 265 the statements must be "so critical" Jaffe either is foreclosed from "new employment in similar ... positions" or becomes an outcast in his community. If the publicity is no worse than the fact of his discharge it cannot rise to that level of significance (*id.* at 266) while if it implicates Jaffe's honesty or morality it can (*id.* at 266 n. 6).

Whether publicity that Jaffe was discharged because of a "racial incident" meets the stringent standard of *Smith* cannot be determined at the pleading stage.[3] *Larry* and *Smith* teach proof of foreclosure from all federal employment would satisfy the stigma requirement automatically. Jaffe has alleged at least one pro-

---

2. This opinion relies on publication to the Naval Reserve rather than publication to the Division of Unemployment Compensation, because it is questionable whether publication associated with an application by the plaintiff for unemployment benefits can constitute "stigma" for present purposes. See *Sherman v. City of Richmond*, 543 F.Supp. 447, 450 n. 2 (E.D.Va.1982);

*Rose v. Eastern Nebraska Human Services Agency*, 510 F.Supp. 1343, 1358–59 (D.Neb.1981).

3. While publicity about a "racial incident" might be sufficiently stigmatizing, publicity about "inability to get along with others" is not. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365–66 (9th Cir.1976).

spective government employer takes charges of racism very seriously.[4] In any event development of the facts through discovery is necessary to determine whether in this case charges of a "racial incident" are more akin to charges of incompetence or charges of immorality.

### Count III

■ Defendants attack Count III, a claim for discriminatory interference with contractual rights under 42 U.S.C. § 1981 ("Section 1981"), on the ground it does not contain sufficient allegations of racially motivated differential treatment.[5] Indeed all Jaffe alleges is that defendants' "unjustified ... assumption of the truth of the charges of racial bias" (Count III ¶ 27) operated "in conjunction with the fact that Plaintiff is white" (*id.* ¶ 28) to lead to Jaffe's termination and therefore "was based upon impermissible racial considerations" (*id.*). Jaffe's response embellishes the count somewhat by explaining that he believes defendants accepted his black co-worker's story and refused to let him respond because he is white and his co-worker is black.

But Jaffe's Count III's allegations have not even attempted to overcome the strictures of *Jafree v. Barber*, 689 F.2d 640, 643–44 (7th Cir.1982). Jaffe cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief under Section 1981. Rather he "must allege some facts that demonstrate that his race was the *reason*" for defendants' actions. 689 F.2d at 643. To the contrary, Jaffe alleges defendants believed they had a valid reason to discharge him, then baldly asserts that reason operated "in conjunction with" his race to cause his discharge.

Jaffe's embellishment of Count III confirms he does not even allege differential treatment of different races as he must to state a prima facie case. See *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 & n. 15, 97 S.Ct. 1843, 1854 & n. 15, 52 L.Ed.2d 396 (1977) (Title VII case). Jaffe alleges only "discrimination" between himself and his black complaining co-worker. But Jaffe and his co-worker were not similarly situated. Defendants' favoring the co-worker's story over Jaffe's is just as likely to be indicative of a tendency to favor the stories of those who complain over the stories of subjects of complaints as it is to be indicative of a tendency to favor blacks over whites. Though the latter would be actionable under Section 1981, the former is not.

Count III is dismissed without prejudice. What Jaffe would have to allege is that if a white co-worker complained about anti-white racial "humor" by a black employee, that black employee would be treated better than Jaffe was. But if Jaffe elects to advance such an allegation he must have some factual basis for doing so, or he or his attorney may be subject to sanctions or

---

**4.** Paragraph 6 of Amended Complaint Ex. E, a memorandum to Jaffe from the Naval Reserve, cannot enter into the calculus on a motion to dismiss but does illustrate the plausibility of Jaffe's allegation:

> 6. Attached is a copy of the Navy's Equal Opportunity Statement. As is evident by this statement, the U.S. Navy strongly supports Equal Opportunity. Any individual applying for a commission in the U.S. Navy, no matter what the program is, who has a record of a violation in this area, would most certainly have greatly reduced his/her chances of obtaining a commission.

**5.** Defendants have chosen not to invoke *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) which holds the United States may not be sued under Section

1981. Apparently that choice is based on the fact they procured dismissal of an earlier action brought by Jaffe in this Court, No. 83 C 3597, on the ground service under Rule 4(d)(5) was improper because Bank is not a United States agency. Even on that assumption, however, it does not necessarily follow Bank and its officers are subject to suit under Section 1981. See *Dorsey v. Federal Reserve Bank of St. Louis*, 451 F.Supp. 683 (E.D.Mo.1978). Bank's freedom from Section 1981 suit might be attributed to sovereign immunity, see *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir.1982), and would therefore be jurisdictional. Moreover whatever may be said of Bank in this regard goes for its officers as well. *Newbold v. United States Postal Service*, 614 F.2d 46 (5th Cir.) (per curiam), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

taxation of their opponents' attorneys' fees for bad faith litigation. See 28 U.S.C. § 1927; Rule 11.

### Count IV

 Defendants' only argument for dismissal of Count IV, sounding in state law defamation, is that the alleged defamatory publication is not actionable per se under Illinois law. Although Jaffe disputes that argument, he also points out he has alleged special damages (loss of Naval Reserve employment), so under Illinois law he need not show defendants' conduct is actionable per se. Jaffe does not call those damages "special" in his amended complaint, but federal (not state) pleading rules apply (*Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)), so the fact the damages fall within Illinois' definition of "special damages" is sufficient to escape dismissal.

### Conclusion

Defendants' motion is granted in part. Count I is dismissed with prejudice, and Count III is dismissed without prejudice. Defendants must answer Counts II and IV by June 19, 1984.