Theodore A. MUELLER, Plaintiff,

v.

FIRST NATIONAL BANK OF the QUAD CITIES, a National Banking Association, a Delaware Corporation, Defendant.

No. 87–4100.

United States District Court, C.D. Illinois.

Feb. 12, 1992.

Edward Sutkowski, Peoria, Ill., for plaintiff.

Martin K. Denis, Chicago, Ill., B. Douglas Stephens, Jr., Rock Island, Ill., for defendant.

## ORDER

MIHM, Chief Judge.

Pending before the court is Plaintiff's motion in limine (# 110), Defendant's motion in limine (# 111), Defendant's second supplemental motion for summary judgment (# 122), and Defendant's motion for certification pursuant to 28 U.S.C. § 1292(b). For the reasons set forth below, the court grants in part and denies in part Plaintiff's motion in limine and Defendant's motion in limine, denies Defendant's motion for summary judgment, and grants Defendant's motion for certification pursuant to 28 U.S.C. § 1292(b).

*Plaintiff's Motion in Limine.*

1. *Total Number of Exhibits.* The court denies Plaintiff's motion regarding the restriction of the total number of exhibits to be used by the Defendant, or to otherwise determine whether Defendant needs to use over 300 exhibits.

2. *Summaries of Committee Meeting Minutes.* The court denies Plaintiff's motion regarding the exclusion of Defendant's Exhibits 229–239, which are summaries of discussions held in the directors' loan committee meetings. The court finds that these summaries are admissible under Federal Rule of Evidence 1006 as summaries of voluminous writings and therefore will be allowed. However, these summaries will not be admissible to the extent that they are determined at trial to be inaccurate or misleading.

3. *Bealer's Business Records.* The court grants Plaintiff's motion to exclude from evidence a variety of internal financial records of Mr. Bealer and his companies, Exhibits 146–159 and 162–166, to the extent that Defendant fails to show the relevance of these exhibits at trial by establishing, for instance, that Plaintiff saw the records contained in these exhibits prior to extending credit to Bealer. The court will not allow in any manner any reference to the record contained in Defendant's Exhibits 146–150 and 162–166 in opening arguments.

4. *Bank's Loan Policy Documents.* The court denies Plaintiff's motion regarding Defendant's Exhibit 136, the Bank's loan policy containing modifications made after Mueller's termination in 1986, and Defendant's Exhibit 139, portions of the Bank's lending policy. However, the court will require that a proper foundation be laid for these exhibits, and Defendant must redact any portion of Defendant's Exhibit 136 which reflects post-termination revisions of the loan policy. As to Defendant's Exhibit 139, Plaintiff may request at trial, pursuant to Federal Rule of Evidence 106, that Defendant be required to submit the entire loan policy from which Defendant's Exhibit 139 was taken.

5. *Behrens's Expert Report.* The court will reserve until trial its ruling on the admissibility of Defendant's Exhibit 141, a written opinion offered by expert witness Robert Behrens.

6. *Defendant's Reports, Exhibits 144, 167, 168, and 169.* The court denies Plaintiff's motion regarding Exhibit 144, a 1988 "Uniform Bank Performance Report" as it is admissible under Federal Rule of Evidence 803(8), which is the "public records" exception to the hearsay rule. The court denies Plaintiff's motion regarding Defendant's Exhibits 167 and 168, two booklets published by the Comptroller of Currency, as they are admissible under Federal Rule of Evidence 902(5) as self-authenticating and Federal Rule of Evidence 803(8) under the "public records" exception to the hearsay rule. The court denies Plaintiff's motion regarding Exhibit 169, a "news re-

lease" of the remarks of Robert L. Clark as it is admissible under Federal Rule of Evidence 902(5) as self-authenticating and Federal Rule of Evidence 803(8) under the "public records" exception of the hearsay rule. The court reserves its ruling on the relevance of Defendant's Exhibits 144, 167, 168, and 169 until trial.

7. *Bealer Title Opinions.* The court grants Plaintiff's motion regarding Exhibits 225–228 to the extent that they go beyond the underlying abstracts of title. The expert's written opinions in such documents are inadmissible as hearsay.

8. *Job Advertisements.* The court denies Plaintiff's motion regarding Defendant's Exhibits 255–260, 267–269, and 297–301, which are various job advertisements for newspapers and magazines. However, the court will require a proper showing of foundation at trial that these positions were available to and represented actual job openings for Plaintiff. Further, the court will reserve its ruling on the admissibility of Defendant's Exhibit 255, statistics on banks in the United States.

9. *Experts' Resumes.* The court denies Plaintiff's motion regarding the exclusion of the resumes of Defendant's experts, Defendant's Exhibits 289–294.

10. *Post–Discharge Discovery.* The court denies Plaintiff's motion regarding evidence discovered by the Bank after Plaintiff's May 1, 1986 termination. However, before introducing such evidence, Defendant's counsel must inform the court and opposing counsel so that the court can reassess the admissibility of this evidence at that time.

11. *Comptroller of the Currency Form WP502–1–A.* The court denies Plaintiff's motion regarding the introduction of Comptroller of Currency Form WP502–1–A, Salary Appraisal–Officers, intended to rebut Plaintiff's Exhibit 19.

*Defendant's Motion in Limine.*

1. *Testimony Regarding Other Bank Employees' Own Employment.* The court grants Defendant's motion regarding the exclusion of all testimony of other former or current Bank employees regarding statements made to them or occurrences regarding their own employment. Plaintiff concedes this point as no such testimony is anticipated.

2. *Testimony By Other Employees Regarding Discrimination.* The court grants Defendant's motion regarding testimony by other former or current Bank employees as to their belief that they were discriminated against. Plaintiff concedes this point as no such testimony is anticipated.

3. *Employee Handbook.* The court reserves ruling on the testimony and evidence regarding Defendant's Employee Handbook, Plaintiff's Exhibits 29, 42, and 43. The court holds that if testimony and evidence regarding the handbook is allowed and introduced for a limited purpose, the parties may submit a limiting jury instruction.

4. *Plaintiff's Exhibit 19.* The court reserves ruling on Plaintiff's Exhibit 19 concerning a purported re-creation of a document Plaintiff and his counsel believe they saw in reviewing documents the Bank produced in response to Plaintiff's discovery requests. Neither party shall refer to such evidence until the court has had an opportunity to consider an offer of proof on its admissibility.

5. *Testimony by Plaintiff's Wife.* The court grants Defendant's motion regarding the exclusion of all testimony of Plaintiff's wife regarding injuries or emotional distress suffered by her or Plaintiff as a result of the Bank's discharge decision. Plaintiff concedes this point as no such testimony is anticipated.

6. *Testimony Regarding Plaintiff's Emotional Stress or Anxiety.* The court grants Defendant's motion regarding all testimony regarding emotional distress or anxiety Plaintiff may have experienced while employed at the Bank or after his discharge in seeking employment as compensatory damages are not recoverable under either the ADEA or ERISA.

7. *Testimony Regarding the Net Worth and Financial Condition of Defendant and Its Parent Company.* The court reserves its ruling on the exclusion of all

testimony about Defendant's current net worth and financial condition and that of its parent company, First of America. If Defendant attempts to make a "failing bank defense," evidence of Defendant's current net worth and financial condition will be allowed.

8. *Evidence Regarding Front Pay.* The court reserves until trial its ruling on the exclusion of all evidence regarding the issue of front pay from the jury, or, alternatively, whether front pay, if appropriate, should be determined by the court and not the jury.

9. *Testimony Regarding Other Lawsuit and Plaintiff's Exhibit 26.* The court denies Defendant's motion regarding testimony concerning the complaint and lawsuit, *First National Bank of the Quad Cities, as Trustee Under Land Trust Agreement No. 1746 v. Petersen, Harned, Von Maur, No. 833–000836,* and Plaintiff's Exhibit 26, with the provision that each party may submit a limiting jury instruction.

10. *Plaintiff's Testimony as an Expert.* The court denies Defendant's motion regarding exclusion of testimony by Plaintiff as an expert witness on lending practices. The court will allow Plaintiff to testify as an expert with the provision that each party may submit a cautionary jury instruction.

11. *Testimony Regarding Defendant's Calculation of Pension Benefits.* The court denies Defendant's motion to exclude testimony and documents regarding the Defendant Board's executive committee meeting on April 15, 1986 involving instructions to President Clark to calculate Plaintiff's pension and fringe benefit entitlements. However, the court requests that Plaintiff advise the court before introducing this evidence.

12. *Whitmore Statement.* The court grants Defendant's motion regarding "Charles Whitmore's 1984 early retirement" statement. The court will allow the Whitmore Outline into evidence but the "early retirement" statement must be redacted.

13. *Testimony Regarding Abstract Age Comments or Generalities.* The court grants Defendant's motion regarding the exclusion of abstract age comments or generalities involving or referring to Defendant's former Chairman, Lewis B. Wilson, with the further provision that if Plaintiff intends to elicit testimony about age comments involving other persons, Plaintiff's counsel will first inform that court of that intended testimony. No reference to abstract age comments or generalities will be allowed by the parties during opening arguments.

14. *Bank Documents Reflecting Ages and Salaries of Bank Officers.* The court denies Defendant's motion regarding the exclusion of testimony or evidence pertaining to Bank documents containing the ages and salaries of Bank officers. Defendant may rebut this evidence by introduction of documents which the Comptroller of the Currency required the Bank to file.

15. *Evidence Regarding Post–Termination Settlement.* The court grants Defendant's motion regarding settlement or compromise offers made by Defendant to Plaintiff after his termination.

16. *Expert Deposition Testimony of Bill Frymoyer or Joseph Beres.* The court grants Defendant's motion regarding the exclusion of any testimony or evidence about or in reliance on the expert deposition testimony of Bill Frymoyer or Joseph Beres. Plaintiff concedes this point as not such testimony is anticipated.

*Defendant's Second Supplemental Motion for Summary Judgment.*

### BACKGROUND

This lawsuit arises out of the termination by Defendant First National Bank of the Quad Cities ("Bank"), of Plaintiff Theodore Mueller ("Mueller"), a former Executive Vice President in charge of lending for the Bank. In his complaint, Mueller alleged that the Bank (1) violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), when it discharged him on May 1, 1986; (2) interfered with his rights under the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"),

by discharging him 28 months before he was eligible for early retirement; (3) discharged him in breach of both an alleged oral contract to employ him until he found another job, and an implied contract created pursuant to an employee handbook; (4) defamed him; and (5) committed the tort of "willful and wanton conduct." Mueller later voluntarily dismissed his defamation and willful and wanton conduct allegations.

On September 2, 1988, the Bank moved for summary judgment as to each of Mueller's remaining statutory and contract claims. In an order entered on March 20, 1989, this court granted partial summary judgment in favor of the Bank, dismissing Mueller's contract claims because they were preempted by the "at pleasure" provision of the National Bank Act ("the Act"), 12 U.S.C. § 24 (Fifth), and, in any event, did not constitute viable contract claims based on either a written contract or promissory estoppel theory. This court found that (1) the Defendant is a national bank subject to the National Bank Act; (2) Mueller was an "officer" of a national bank and otherwise subject to dismissal "at pleasure" within the meaning of § 24 (Fifth) of that Act; and (3) the Bank complied with the procedural requirements of the Act in connection with Mueller's dismissal. *See,* March 20, 1989 order, pp. 2, 15–18. However, this court denied summary judgment with respect to Mueller's statutory ADEA and ERISA claims, finding genuine issues of material fact as to the merits of these claims. On December 17, 1990, this court denied the Bank's first supplemental motion for summary judgment raising additional arguments concerning the merits of Mueller's federal statutory claims.

On August 8, 1991, the Bank filed its second supplemental motion for summary judgment, asserting that the prohibitions contained in the ADEA and ERISA, to the extent that they limit or constrain the dismissal of national bank officers, conflict with the "at pleasure" discharge provision of the National Bank Act. The Bank further argued that neither the ADEA nor ERISA expressly or impliedly repealed the more specific National Bank Act "at pleasure" provision.

## DISCUSSION

The issue in this case is whether there is a conflict between the "at pleasure" language in § 24 (Fifth) of the National Bank Act and provisions contained in the ADEA and ERISA regarding the conditions under which a national bank governed by the Act may terminate a bank officer. If a conflict does exist between the statutes, the court must decide whether 12 U.S.C. § 24 preempts the provisions of the ADEA and ERISA. Section 24 entitled Corporate Powers of Associations, states that a national banking association:

> shall have power ... to elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers of any of them at pleasure, and appoint others to fill their places.* (Emphasis added).

The language of this provision whereby banks are given leeway to terminate bank officers "at pleasure," must be analyzed in conjunction with provisions of the ADEA, which purports to "promote employment of older persons based on their ability rather than age" and "prohibit arbitrary age discrimination," 29 U.S.C. § 621(b), and provisions of ERISA, which purports to "protect interstate commerce and the interests of participants and employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).

In support of its motion for summary judgment, Defendant argues that 12 U.S.C. § 24 (Fifth) conflicts with the provisions of the ADEA and ERISA. Because there is a direct conflict, Defendant argues that § 24 should preempt the provisions of ADEA and ERISA, thereby destroying Plaintiff's remaining claims based on violations of the ADEA and ERISA. Defendant argues that the statutory language contained in § 24 (Fifth), whereby a national banking association may "dismiss such officers ... at pleasure" should be interpreted to mean

that national bank directors are vested with unfettered discretion to dismiss bank officers for any reason or no reason at all. *Kemper v. First National Bank*, 94 Ill. App.3d 169, 49 Ill.Dec. 799, 801, 418 N.E.2d 819, 821 (5th Dist.1981) (provision for dismissal of officers "at pleasure" consistently construed to allow national bank to discharge an officer without liability); *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1098–1100 (9th Cir.1981) (construing analogous Federal Reserve Act provision); *Jaffe v. Federal Reserve Bank of Chicago*, 586 F.Supp. 106, 107–08 (N.D.Ill.1984) ("at pleasure" provision of Federal Reserve Act prevents development of any reasonable expectation of continued employment); *Mahoney v. Crocker National Bank*, 571 F.Supp. 287, 289 (N.D.Cal.1983) (under National Bank Act, board may dismiss officer without incurring liability for breach of contract or wrongful discharge).

Defendant argues that the breadth of 12 U.S.C. § 24 (Fifth) goes beyond contractual rights. Defendant contends that this is evidenced by cases where the National Bank Act has preempted employee discrimination laws at the state level. *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir.1987) (employees rights under Michigan civil rights statute were preempted by "at pleasure" language of Federal Reserve Act).

Relying on general rules of statutory construction, Defendant asserts § 24 of the Act necessarily preempts any restrictions implemented by the ADEA and ERISA because the National Bank Act became law in 1864 and is a narrow statute addressing the specific rights of national banks. Defendant argues that the ADEA and ERISA are more general statutes addressing employees' rights in all sectors which fail to repeal or qualify the authority granted banking employers in the National Bank Act previously. Neither the ADEA nor ERISA make express reference to the National Bank Act and its provision permitting dismissal of bank officers "at pleasure." To the contrary, § 514(d) of ERISA states that:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ... or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d). Defendant suggests that this provision expresses congressional intent not to disturb existing federal law and policies where ERISA would otherwise create a conflict. *See, Allen v. Wachovia Bank & Trust Company*, 470 F.Supp. 18, 21 (E.D.N.C.1978) (relying upon § 514(d), the court ruled that the National Bank Act venue provision controls over ERISA venue provision).

With regard to the ADEA, Defendant maintains that Congress explicitly repealed only two federal statutes with the passage of the ADEA, which supports the inference that other federal acts governing employment were not intended to be repealed. Defendant also notes the failure of Congress to enact a bill which would have expressly repealed all *federal* statutes relating to age or discharge generally:

> Notwithstanding any other provision of federal law relating to mandatory retirement requirements or relating to the hiring, discharging or promoting of employees or applicants for employment and notwithstanding any other provision of law, employees or applicants for employment who are at least 40 years of age ... shall be free from any discrimination based on age.

H.R.Rep. No. 95–527, 95th Cong. (1st Sess. 5) (1977). Defendant makes the argument that the ADEA does not purport to cover all instances of alleged age discrimination in employment. Expressly exempt are foreign employers, certain bona fide executives or policy-makers, and elected state officials, and those in active military service are not within the scope of the Act. 29 U.S.C. §§ 623(g), 631(c), 630(f). *Kawitt v. United States*, 842 F.2d 951 (7th Cir. 1988). However, relying on the principles of statutory construction, this court sees these specific exemptions as further support for Plaintiff's position that bank executives are not exempt and therefore subject to the provisions of the ADEA.

Plaintiff responds that there is no conflict between § 24 of the Act and the provisions of the ADEA and ERISA. Because there is no conflict, the need to rely on rules of statutory construction or public policy arguments is unnecessary. Unlike Defendant, who argues that the "at pleasure" clause of § 24 places no restrictions whatsoever on a bank employer, Plaintiff argues that this language is synonymous with the common law meaning of "at will." Plaintiff argues that "at will" employment deals specifically with an employee's lack of contractual rights in his employment. Thus, courts have ruled that when interpreting the "at pleasure" provision of the National Bank Act, that a "board of directors may dismiss an officer prior to the expiration of his or her term of employment without incurring liability for breach of contract or wrongful discharge." *Mahoney v. Crocker National Bank*, 571 F.Supp. 287, 289 (N.D.Cal.1983); *see also, Kemper v. First National Bank in Newton*, 94 Ill.App.3d 169, 49 Ill.Dec. 799, 418 N.E.2d 819 (5th Dist.1981); *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir.1981); *Jaffe v. Federal Reserve Bank of Chicago*, 586 F.Supp. 106, 109 (N.D.Ill.1984); *Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928 (6th Cir.1987). Notable is the definition of "pleasure" as provided by the Oxford Universal Dictionary (3rd Ed.1933) and cited in Defendant's reply: "[a]s or when one pleases, *at will*, at discretion ... *one's will*, desire, choice." (Emphasis added).

Plaintiff argues that the National Bank Act's "at pleasure" provision provides for the "at will" employment of bank officers only. Accordingly, this court dismissed Mueller's contract claims because he did not have a contract upon which to base a contractual claim. However, Plaintiff maintains that his lack of contractual rights does not alter his remedies under ERISA and ADEA as these rights are not premised on the presence of a contractual relationship.

Plaintiff distinguishes Defendant's cited authority as cases which rule on a national bank's rights to terminate in the setting of a contractual dispute, or cases which rule on the matter of federal preemption over *state* discrimination laws. (See cases cited above). Significantly, Plaintiff points to two cases cited by Defendant, where the court ruled that discrimination claims under Title VII and under § 1981 respectively could have been brought in situations where the "at pleasure" language of a federal act was at issue. In *Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir.1987), the court held that the "at pleasure" language of the Federal Reserve Act "preempts any *state-created* employment right to the contrary." The *Leon* court then went on to state:

> Although a claim of discrimination based on national origin could not have been brought under the Elliott–Larsen Act, *Leon could have brought her claim under Title VII of the Civil Rights Act of 1964.*

*Id.* at 931 (emphasis added). This holding indicates that a *federal* anti-discrimination remedy would have been available regardless of the "at pleasure" language under different circumstances. *Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir.1987).

In *Jaffe v. Federal Reserve Bank of Chicago*, 586 F.Supp. 106, 107–09 (N.D.Ill. 1984), the court stated that the plaintiff could advance a claim for "discriminatory interference with contractual rights under 42 U.S.C. § 1981" if he had the "factual basis" for the "differential treatment of different races" allegation. Pursuant to the authority above, Plaintiff argues that even though his contractual claims were subject to preemption by the "at pleasure" language of the National Bank Act, he still has statutory remedies for discrimination claims under federal law.

Both parties make extensive public policy arguments regarding their respective interpretations of 12 U.S.C. § 24 (Fifth) and it's interplay with the ADEA and ERISA. Defendant argues that the public policy behind the National Bank Act requires that national banks have the prerogative to terminate their bank officers without recourse in order to preserve the public's confidence in a national banking system, which, of

necessity, must deal with incompetence and fraud swiftly and efficiently. Plaintiff argues that the public policy behind the ADEA and ERISA are compatible with, if not supplemental to, the policy behind the National Bank Act. He states that public confidence would be shaken but for the knowledge that national banks must adhere to the non-discriminatory practices dictated by the ADEA and ERISA. Because the court is able to rule on this matter relying upon the common law, legislative history and principles of statutory construction, the court does not rely upon these public policy arguments but will nevertheless mention them briefly in the court's conclusion.

## CONCLUSION

This is clearly a case of first impression. The National Bank Act was implemented in 1864, well before the inception of the ADEA or ERISA. There is no authority in legislative history or common law which specifically addresses the impact of the provisions of the ADEA and ERISA upon a national bank employer's rights to terminate a bank officer under 12 U.S.C. § 24 (Fifth). With that in mind, this court adopts Plaintiff's interpretation of the statutory language contained in § 24 (Fifth) of the National Bank Act. The court believes that Congress intended the "at pleasure" language to mean "at will" as applied in the common law. The purpose of the "at pleasure" provision was to give national banks the "greatest latitude possible to hire and fire their chief operating officers." *Mackey v. Pioneer National Bank,* 867 F.2d 520, 526 (9th Cir.1989). That latitude, however, was intended in a contractual sense. The court finds persuasive Plaintiff's reliance upon *Leon* and *Jaffe* in which those courts recognized a plaintiff's rights under the federal discrimination statutes in the face of the "at pleasure" language in a national banking statute.

Regarding the parties' public policy arguments, the court disagrees with Defendant that a broad interpretation of 12 U.S.C. § 24 (Fifth) which would give a national bank the unfettered right to discharge an officer on discriminatory grounds constitutes sound public policy. The public policy concern underlying 12 U.S.C. § 24 involved the banking community's ability to remove inefficient, incompetent or dishonest officers "at will" without contractual challenges stemming from oral representations, employee handbooks, and ambiguous contractual language. The legislature recognized that a bank's inability to dismiss such officers would undermine the public's confidence in the national banking system. Although the court agrees with Plaintiff that it is good public policy to hold all non-exempt employers accountable under the ADEA and ERISA, the court does not agree with Plaintiff's contention that these provisions "enhance" the public policy underlying the National Bank Act. The court recognizes that the ADEA and ERISA provisions restrict bank employers in exercising their termination powers and thereby do not enhance or extend their discretionary powers created by the Act. For the reasons set forth above, this court denies Defendant's second supplemental motion for summary judgment.

*Defendant's Motion to Certify for Interlocutory Appeal.*

■ In Defendant's proposed findings of fact and conclusions of law regarding Defendant's second supplemental motion for summary judgment (# 137), Defendant argues that this order denying the Bank's second supplemental motion for summary judgment should be certified for immediate appeal pursuant to 28 U.S.C. § 1292(b). Defendant argues that this order involves a controlling issue of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Defendant argues that there are "substantial grounds for difference of opinion" on the issue of whether 12 U.S.C. § 24 (Fifth) should control over competing federal statutes. Although this court denied the Bank's motion, it recognized that the arguments in favor of the Bank's position are "not insubstantial." *Max Daetwyler Corp. v. Meyer,* 575 F.Supp. 280, 283 (E.D.Pa. 1983) (test is whether "the arguments in

support of the opposite conclusion are not insubstantial"). Further, this is a case of first impression which affords an additional basis for certification. *Accord, Isaacs v. Caterpillar, Inc.,* 765 F.Supp. 1359, 1375–76 (C.D.Ill.1991); *O'Conner v. Commonwealth Edison,* 748 F.Supp. 672, 679 (C.D.Ill.1990).

Finally, Defendant argues that an immediate appeal would materially advance the ultimate termination of this litigation. Defendant contends that there is no dispute that the potential conflict between the National Bank Act and the ADEA and ERISA statutes, if resolved in favor of the Bank, would dispose of the entire litigation. Should the Seventh Circuit reverse this court's decision, Mueller's claims under ERISA and the ADEA will be barred, and the case will be terminated. *Simmons v. Parkette National Gymnastic Training Center,* 670 F.Supp. 140, 145 (E.D.Pa.1987) (certifying release case for appeal in part because "if the circuit court disagrees with our decision and concludes that the ... plaintiff is bound by the agreement, the action will be at its end").

The court agrees that Defendant's second supplemental motion for summary judgment involves a controlling issue of law as "to which there is substantial ground for difference of opinion in that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C.A. § 1292(b) (1991). Although this court feels that it has correctly interpreted the meaning of these statutes and the cases which address 12 U.S.C. § 24 (Fifth), there are no cases directly on point and the authority relied upon is sufficiently ambiguous or distinguishable on particular facts to create grounds for differing interpretations. There are also substantial public policy considerations effected by the decision. Therefore, Defendant's request for § 1292(b) certification is granted.