MARTIN, Circuit Judge,
dissenting:
Today’s majority holds that when Congress passed the National Banking Act (NBA) in 1864, it intended — 150 years later — for the three words “dismiss at pleasure” to preempt Marc Wiersum’s retaliation claim under the Florida Whistle-blower’s Act, Fla. Stat. § 448.101-.105. If the majority is right, those three words will also serve to preempt every state. employment-law protection not mirrored in federal law for thousands of bank officers in this Circuit. Based on my analysis of the history and meaning of the NBA, the majority’s interpretation vastly overestimates Congress’s limited intent when it included those three words. And in doing so, the majority’s holding works to disrupt the careful balance between state and federal interests that our preemption doctrine is meant to protect. For these reasons, I respectfully dissent.
I.
Mr. Wiersum’s case presents the question of whether the dismiss-at-pleasure language in the NBA preempts a bank *492 officer’s claim under the Florida Whistle-blower’s Act. Mr. Wiersum sued under this Florida statute, claiming that he was fired from his job as a bank officer in retaliation for reporting what he believed were his employer’s violations of federal banking law. In evaluating whether a federal law preempts state law, the “question is basically one of congressional intent. Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State? If so, the Supremacy Clause requires courts to follow federal, not state, law.” Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996); see also Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (“The purpose of Congress is the ultimate touchstone of preemption analysis.” (quotation marks omitted)). Important for this case, we have been warned not to read laws “as if they were written today, for to do so would inevitably distort their intended meaning.” Goldstein v. California, 412 U.S. 546, 564, 93 S.Ct. at 2303, 2313, 37 L.Ed.2d 163 (1973). Thus the question presented here is whether, “against the background” of 1864, id., Congress intended for the NBA to set aside state employment-law protections like the Florida Whistleblower’s Act for bank officers. The majority says yes. I cannot agree.
Although Congress left us “no record of any discussion of [the dismiss-at-pleasure provision], or of any specific purpose or motive it might have had in enacting it,” a careful analysis of the historical context of the NBA’s enactment suggests that its purpose was “quite narrow.” Goonan v. Fed. Reserve Bank of N.Y., 916 F.Supp.2d 470, 492-93 (S.D.N.Y.2013) (quotation omitted) (interpreting identical language from the Federal Reserve Act). As one commentator has explained, this dismiss-at-pleasure provision “was a limited effort to deal with a specific problem: the risk that national banks would, either explicitly or by common law implication, contractually restrict their ability to discharge bank officers.” Miriam Jacks Achtenberg, Note, Rereading the National Bank Act’s ‘At Pleasure’ Provision: Preserving the Civil Rights of Thousands of Bank Employees, 43 Harv. C.R.-C.L. L.Rev. 165, 172 (2008).[1] In creating our national banking system, Congress recognized that just one person serving as a bank officer could develop a reputation as untrustworthy or dishonest, and thereby put at risk the reputation of the bank where he worked, or even the banking system as a whole. See Westervelt v. Mohrenstecher, 76 F. 118, 122 (8th Cir.1896). To avoid that risk, Congress insisted that banks have the freedom to dismiss officers “at pleasure” rather than being locked into a long-term employment relationship with an officer bringing disrepute upon the bank. This meant only that bank officers are “at will” employees, as opposed to “term” employees.[2]
It is understandable that in 1864, Congress would have seen this as necessary. *493 In the eighteenth and early nineteenth century, “[e]mployment for an unspecified term was presumed to be annual, and dismissal within that term had to be for cause.” M.B.W. Sinclair, Employment at Pleasure: An Idea Whose Time Has Passed, 23 U. Tol. L.Rev. 531, 541 (1992). As Professor Sinclair notes:
We are accustomed to thinking of employment law in the United States as basically a regime of employment at will.... But this was not the back-drop against which the “at pleasure” language was drafted and enacted.... [T]he relevant legal background of the “at pleasure” language is not a regime of employment at will but of annual employment, unless subject to contrary agreement.
Id. at 540-41; see also Jay M. Feinman, The Development of the Employment at Will Rule, 20 Am. J. Legal Hist. 118, 125 (1976) (highlighting the “rise of employment at will” in the mid-nineteenth century and noting that it was not until “the 1870’s [that] the presumption of yearly hiring was recognized as anachronistic”). For instance, although a treatise in the late nineteenth century declared that “a general or indefinite hiring is prima facie a hiring at will,” H. Wood, A Treatise on the Law of Master and Servant § 134, at 272 (1877), an earlier version of that same treatise stated that “[w]here no time is limited either expressly or by implication, for the duration of a contract of hiring and service, the hiring is considered ... in point of law a hiring for a year,” see C. Smith, Treatise on the Law of Master and Servant 53 (1852).
This backdrop of laws governing employment in 1864 strongly suggests that Congress simply intended' to free banks from the constraints of the year-term presumption that existed in employment law at the time. My understanding is consistent with that of other courts that have examined the history of the NBA. See, e.g., Goonan, 916 F.Supp.2d at 494 (“Congress’s apparent purpose in enacting the [NBA’s] dismiss at pleasure [provision] was protection of public confidence in [banks] by eliminating a potential threat to that trust — specifically, contractual obligations under state law that could force [banks] to retain corrupt or incompetent employees.”); Katsiavelos v. Fed. Reserve Bank of Chi, No. 93 C 7724, 1995 WL 103308, at *4 (N.D.Ill. Mar. 3, 1995) (holding that the Illinois Human Rights Act is not preempted “because the ‘at pleasure’ language ... only serves to pre-empt state law created contractual employment rights”); Mueller v. First Nat’l Bank of Quad Cities, 797 F.Supp. 656, 663 (C.D.Ill. 1992) (“Th[e] latitude [given to banks in the ‘at pleasure’ provision] was intended in a contractual sense.”). Under this interpretation, the NBA is clearly intended to preempt state common-law contract claims that would restrict a bank’s ability to fire an officer “at will.” But there is simply no. evidence that Congress intended for the NBA to preempt a state anti-retaliation statute like the Florida Whistleblower’s Act, which prevents employers from taking “retaliatory personnel action against an employee because the employee has ... [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.” Fla. Stat. § 448.102. Indeed, the Florida Whistleblower’s Act is consistent with Congress’s 1864 goal to ensure public confidence in our banking system. I would hold that the NBA does not preempt Mr. Wiersum’s claim.[3]
*494 II.
The majority quite rightly references our obligation to look to the plain meaning of the language of the statute. I believe “at pleasure” plainly means “at will.” The majority, however, gives the words of the NBA, “dismiss at pleasure,” quite an expansive purpose. It says that “any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress.” Panel Op. at 11 (quoting Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214, 220 (4th Cir.1993)). In doing so, the majority ignores our long-standing presumption against preemption. See, e.g., Cipollone, 505 U.S. at 518, 112 S.Ct. at 2618 (“[W]e must construe [federal] provisions in light of the presumption against the pre-emption of state police power regulations.”); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (“[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.”). In the face of this presumption, I see no reasoned basis to hold that the NBA trumps the protections provided by the Florida Whistleblower’s Act.[4]
But setting aside this presumption against preemption, the majority’s conclusion necessarily relies on two “questionable interpretive moves.” Goonan, 916 F.Supp.2d at 496. First, the Florida statute was passed almost a century and a half after Congress enacted the NBA.[5] The passage of so much time makes it “implausible to conclude that the drafters of the [NBA] could have possessed any sort of ‘intent’ whatsoever with respect to preemption of state (or federal) [whistleblower] laws.” Id. Judge Oetken observes “that authors, including Congress, simply cannot possess ‘intentions’ or express ‘meaning’ with respect to concepts or institutions unavailable in their lived historical moment.” Id. at 497. I agree with Judge Oetken that it takes quite an “adventurous approach” to read Congress’ 1864 intent as preempting the Florida Whistleblower’s Statute. Id.
Second, the majority justifies its interpretation by declaring that “Congress made a policy choice that granting banks broad discretion to dismiss specified bank officials was necessary to maintain public trust.” Panel Op. at 7 n. 3. But the majority’s enforcement of this broad policy choice by preempting current state laws causes an incongruous result. The NBA speaks only to a bank’s power to dismiss an officer. In contrast, the Florida Whistleblower’s Statute prohibits “any retaliatory personnel action” against employees who object to their employers’ violations of the law, including “the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment.” Fla. Stat. §§ 448.102, 448.101(5). Under the majority’s reason *495 ing, then, Congress assured that banks can dismiss officers freely to maintain public trust, but at the same time left states free to protect employees from demotion, temporary suspensions, and other punishments short of firing. This renders the NBA a strangely under-inclusive attempt to achieve the goals that the majority believes Congress had in mind.
III.
The majority does not respond to these shortcomings in its analysis. First, it fails to address Mr. Wiersum’s argument that the NBA was only intended to preempt state-contract-law claims because it says he raised this argument for the first time on appeal. Panel Op. at 491 n. 8. But the argument is right there in his District Court papers, in black and white. Mr. Wiersum’s Response in Opposition to U.S. Bank’s Motion to Dismiss in the District Court includes the following passage:
[U.S. Bank’s] defense assumes that “at pleasure” and “at will” are different. This is not the case. The NBA ... only voids employment law contracts for a specified term for banking officers, and its “at pleasure” provision adds nothing more than what the law is in “at will” states. These terms of art mean that an employer may terminate an employee for a good reason, no reason or even a bad reason. The terms do not allow for illegal terminations.
Resp. in Opp’n 1-2, Dec. 6, 2013, ECF No. 9.[6] Beyond this excerpt, Mr. Wiersum cited directly to the Achtenberg article I quote above, see id. at 3, which lucidly describes “the National Banking Act’s limited intent: to prevent banks from entering into noncancelable fixed-term employment contracts with their officers and to trump any common law presumption that such a contract existed.” Achtenberg, supra, at 166. Mr. Wiersum quite obviously made the argument he pursues here on appeal: that the NBA only preempts state-law claims that seek to enforce term-employment contracts for bank officers.
But even if we ignored Mr. Wiersum’s filings in the District Court and found that he had not made the precise argument below that he makes on appeal, the Supreme Court has told us that “[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.” Yee v. City of Escondido, Cal., 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992). Giving life to this idea in Yee, the Court held that “[petitioners’ arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate claims. They are, rather, separate arguments in support of a single claim — that the ordinance effects an unconstitutional taking.” Id. at 534-35, 112 S.Ct. at 1532. Likewise here, Mr. Wiersum’s argument that the NBA was only intended to preempt state contract law claims is simply one argument in support of his broader claim that the NBA does not preempt the Florida Whistleblower’s Act. The preemption claim was clearly presented to and ruled upon by the District Court.
*496 Next, the majority looks to cases from the Fourth and Sixth Circuits. However, these cases have very little supporting their broadly preemptive interpretation of the.NBA. In Andrews, the Fourth Circuit concluded without explanation that “Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees,” and that “[a]ny state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress.” 998 F.2d at 220. The Andrews court cited to the Sixth Circuit’s decision in Ana Leon T. v. Federal Reserve Bank of Chi, 823 F.2d 928 (6th Cir.1987) (per curiam), which also held without any elaboration that the dismiss-at-pleasure provision “preempts any state-created employment right to the contrary.” Id. at 931. Similarly, in Schweikert v. Bank of Am., N.A., 521 F.3d 285 (4th Cir.2008), the Fourth Circuit declared that “the at-pleasure provision of the NBA preempts state law claims for wrongful discharge.” Id. at 288-89. The Schweikert court cited Andrews without any further analysis.
Of course appellate judges often look to sister Circuits for guidance. However in light of the criticism the Fourth and Sixth Circuits have received for their cursory treatment of this important issue, I hoped that our Court would look more deeply. See, e.g., Kroske v. U.S. Bank Corp., 432 F.3d 976, 985 (9th Cir.2005) (disagreeing with “the Sixth Circuit’s summary conclusion” because it contained “little analysis of the issue”); Moodie v. Fed. Reserve Bank of N.Y., 831 F.Supp. 333, 336 (S.D.N.Y.1993) (“[T]he Sixth Circuit’s pronouncement gives no basis for its opinion and sets forth no policy reasons for its holding.”). Neither the Sixth nor the Fourth-Circuit opinions even mention the idea that the NBA was only meant to ensure that bank officers were treated as “at will” employees and not to preempt all state employment protections for bank officers. I would prefer that our panel not simply rely on these cases and their conclusory assertions of preemption as controlling in Mr. Wiersum’s case.[7]
In this same way, I also believe the majority too readily discounts Mr. Wiersum’s reliance on “nonbinding, distinguishable state and federal-district-court cases, when there are consistent Supreme Court, statutory-interpretive principles and federal-circuit precedent specifically supporting [its] decision that the at-pleasure provision of the NBA preempts the [Florida Whistleblower’s Act].” Panel Op. at 487 n. 3. This is a case of first impression for our Court. Neither has the Supreme Court addressed this issue, so no prior precedent binds us here. For that reason, overlooking the reasoning of non-circuit-court opinions seems shortsighted, where some district-court decisions offer us a far more detailed and persuasive analysis of the *497 preemptive force of the NBA compared to the terse conclusions of the Fourth- and Sixth-Circuit opinions.
IV.
The consequences of the majority’s ruling are worrying. The majority denies bank officers — of which there are thousands nationwide, see Achtenberg, supra, at 165 — the protection of state employment laws. Most obviously, bank officers are no longer protected by anti-retaliation statutes like the Florida law at issue here. But neither will bank officers any longer enjoy the protection of state and local anti-discrimination laws that offer protections the federal anti-discrimination regime does not.
For instance, in New York, employers are prohibited from firing an employee because of “an individual’s political activities,” “an individual’s legal use of consumable products,” or “an individual’s legal recreational activities.” N.Y. Lab. Law § 201-d(2)(a)-(c). Yet under the majority’s rule, banks would be empowered to fire their officers with impunity when one donates to the political party of his choice, or smokes cigarettes, or hunts. And while some states and localities prohibit firing an employee because of her sexual orientation, the majority ruling will allow banks in those jurisdictions to fire an officer for being gay. Absent clear Congressional intent, I would not so easily strip away these legal protections which state legislatures saw fit to put in place.[8]
I am also troubled by the implications of the majority’s reasoning on the ability of states to'freely exercise their police powers without federal intrusion. Before today’s decision, “we startled] with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress.” Rice, 331 U.S. at 230, 67 S.Ct. at 1152; see also Bond v. United States, — U.S. -, -, 134 S.Ct. 2077, 2088-89, 189 L.Ed.2d 1 (2014) (“It has long been settled ... that we presume federal statutes do not ... preempt state law.” (citations omitted)). This rule makes good sense. “When preemption of state law is at issue, we must respect the ‘principles that are fundamental to a system of federalism.’ ” Johnson v. Fankell, 520 U.S. 911, 922, 117 S.Ct. 1800, 1807, 138 L.Ed.2d 108 (1997) (alteration adopted) (citation omitted).. In other words, we did not casually usurp the power of state legislatures to enact laws without a clear and countervailing command from Congress. Yet after today’s decision, Acts of Congress enacted in centuries past can apparently reemerge — like mummies from their tomb — to preempt state laws that no lawmaker could have imagined at the time the Acts were passed. This application of the preemption doctrine alters the balance between the federal government and the sovereign states in a way generally avoided by this Court. See Johnson v. Governor of Fla., 405 F.3d 1214, 1251 n. 35 (11th Cir.2005) (en banc) (“If Congress wishes to alter the balance of power [between the federal government *498 and the states], its intention must.be unmistakably clear.”); see also Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 2401, 115 L.Ed.2d 410 (1991) (noting that “it is incumbent upon the federal courts to be certain of Congress’ intent before finding that federal law overrides” the “usual constitutional balance of federal and state powers” (quotation marks omitted)).
V.
Based on my analysis of Congress’ intent at the time of passage, I would find that the National Banking Act does not preempt state employment law protections like the Florida Whistleblower’s Act for bank officers. I therefore respectfully dissent.

. The majority finds it "[p]uzzling” that I "support[] [my] position with secondary authority, including law-review articles.” Panel Op. at 487 n. 3. However, where legal scholars have researched and written about areas of the law in a way that helps me more fully understand and appreciate the questions pre- ■ sented in an appeal I am considering, I feel no shame about consulting them.

. Such an interpretation is- confirmed by the synonymous use of the terms "at pleasure” and "at will” during the late-nineteenth century. See Achtenberg, supra, at 172 ("In the nineteenth century, the terms were used interchangeably, and both referred to a single concept: employment under a contract containing no express or implied contractual limit on the employer’s right to discharge them.”).

. The majority insists that I would "rewrite 12 U.S.C. § 24 (Fifth),” Panel Op. at 488 n. 4, or that I believe "§ 24 (Fifth) is no longer applicable law,” Panel Op. at 489 n. 5. Nei *494 ther is true. I simply seek to apply principles of statutory interpretation to understand what "at pleasure” meant at the time of the NBA’s passage. Based on my analysis, I am confident that the term in the statute as written requires only that banks employ officers at will, nothing more.

. The majority suggests that Mr. Wiersum could have brought an action under "the applicable federal-banking-whistleblower statute, 12 U.S.C. § 1831j.” Panel Op. at 491 n. 8. However, Section 183 lj "does not by its own effect foreclose additional obligations imposed under state law.” Cipollone, 505 U.S. at 518, 112 S.Ct. at 2618.

. The Florida Whistleblower’s Act was passed in 1991. See 1991 Fla. Sess. Law Serv. Ch. 91-285, § 5.

. The majority can “strongly disagree,” Panel Op. at 491 n. 8, with this excerpt from Mr. Wiersum’s District Court filing, but it says what it says. He clearly raised before the District Court his argument that "the NBA at-pleasure preemption should be limited to contractual claims.” Id. The majority is right that Mr. Wiersum did not clearly raise before the District Court his argument under the partial-preemption doctrine. But I would not adopt Mr. Wiersum's foreclosed partial-preemption theory. It is his argument that the NBA’s preemptive effect should be limited to contractual claims that I would have this Court adopt.

. The majority says that the Florida Supreme Court addressed this issue in Citizens National Bank & Trust Co. v. Stockwell, 675 So.2d 584 (Fla. 1996). See Panel Op. at 487 n. 3. Not so. In Stockwell, bank officers sought to enforce their employment contracts and won, even in the face of the bank’s reliance on the NBA. The Florida Supreme Court held that the NBA "does not preclude enforcement of severance benefits contained in officers’ employment contracts.” Id. at 585 (emphasis added). In so holding, the Court emphasized that although severance benefits will be enforced, a bank "can still fire its officers at will without giving rise to suits for damages based on the termination.” Id. at 586 (emphasis added). In any event, even if the Florida Supreme Court had addressed the very subject at issue here, its analysis of the preemptive effect of the NBA — a federal statute— would not bind us. See, e.g., RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997) ("Although state court precedent is binding upon us regarding issues of state law, it is only persuasive authority on matters of federal law.”).

. The majority says such consequences are ''far-fetched” because they have “not been the experience for 150 years, manifested by decisions of other federal circuit courts that have addressed this issue during that time.” Panel Op. at 490 n. 7. Yet decisions of other federal circuit courts prove just the opposite. For example, in Ana Leon T., the Sixth Circuit held that the Federal Reserve Act's dismiss-at-pleasure provision preempted the plaintiff’s claim for discriminatory discharge on the basis of national origin, in violation of the Michigan Elliott-Larsen Act, Mich. Comp. Laws § 37.2101. 823 F.2d at 929. Even if this were not true, the majority has offered no reasoned basis why the Florida Whistleblower’s Act is preempted but all other state employment-law protections are not.