**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHY KROSKE, an individual,
*Plaintiff-Appellant,*

v.

US BANK CORP., a foreign
corporation; dba US Bank
*Defendants-Appellees.*

No. 04-35187

D.C. No.
CV-02-00439-RHW

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
July 15, 2005—Seattle, Washington

Filed December 23, 2005

Before: A. Wallace Tashima, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Paez

16639

**COUNSEL**

Christine M. Weaver & Sean D. Jackson, Miller, Devlin, McLean & Weaver, P.S., Spokane, Washington, for the plaintiff-appellant.

Thomas Bassett & Angel Rains, Lukins & Annis P.S., Spokane, Washington, for the defendant-appellant.

**OPINION**

PAEZ, Circuit Judge:

Kathy Kroske appeals the district court's order granting Defendant U.S. Bank Corp.'s motion for summary judgment, dismissing Kroske's age discrimination claim under the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code §§ 49.60.010-.400. Kroske first contends that the district court erroneously concluded that the amount in controversy exceeded $75,000 and therefore improperly determined that it had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Kroske further argues that the district court erroneously concluded that the National Bank Act, 12 U.S.C. §§ 21-216d, preempts her age discrimination claim under the WLAD. We have jurisdiction under 28 U.S.C. § 1291. We conclude that diversity jurisdiction is proper and that Kroske's age discrimination claim under the WLAD was not preempted. Accordingly, we reverse and remand.

## I.   Background

U.S. Bank Corp., a Delaware corporation, is a federally chartered National Banking Association that was formed in accordance with the National Bank Act, 12 U.S.C. § 21. The Bank is governed by a board of directors, which is empowered by the Bank's bylaws to elect and discharge officers.

Kathy Kroske began working for the Bank in 1977 as a teller. On April 20, 1993, the Bank's board of directors elected Kroske as an officer in the role of Assistant Vice President. During restructuring due to a merger, the Bank changed Kroske's position from retail market manager to manager of

the Manito bank branch in Spokane, Washington. As manager, Kroske was notified that her branch was not meeting the Bank's goals and quotas for business activity. Although Kroske contends that her branch was the smallest in the area with the fewest employees, and that she was short-staffed, the Bank continued to insist that her branch meet fixed business activity levels and warned that she would be disciplined if it did not. Ultimately, in July 2002, the Bank terminated Kroske for allegedly failing to meet the daily performance goals. The board of directors subsequently ratified Kroske's termination in a meeting convened in Minneapolis, Minnesota.

Kroske filed suit in Washington State Superior Court against the Bank. She alleged that at the time of her termination, the other branch managers in the region were in their twenties and thirties, while Kroske was fifty-one years old. Further, the Bank allegedly gave these younger managers a reasonable opportunity to meet the business activity goals and denied Kroske such an opportunity. In addition, Kroske contended that she was replaced by an employee who was in his mid-twenties and possessed less experience than Kroske. Kroske therefore alleged that the Bank had terminated her on the basis of her age in violation of the WLAD, and sought damages, as well as attorney's fees and costs. In her complaint, Kroske did not allege any federal causes of action.

The Bank removed the case to federal court and, once in federal court, filed a motion for summary judgment arguing that Kroske's state discrimination claim was preempted by the National Bank Act, specifically 12 U.S.C. § 24(Fifth), which grants national banks the power to dismiss officers "at pleasure." Kroske opposed the motion, contending that she was not an officer under § 24(Fifth) and, in the alternative, that the National Bank Act did not preempt her age discrimination claim under the WLAD.

The district court granted the Bank's motion for summary judgment. The court held that Kroske qualified as an "officer"

under the National Bank Act. Further, the district court concluded that § 24(Fifth) preempts the field of law regulating the Bank's employment practices and therefore preempted Kroske's age discrimination claim under the WLAD. Kroske timely appealed, challenging the district court's jurisdiction and the grant of summary judgment.

## II.    Amount In Controversy

Kroske first contends that removal of her case to federal court was improper because the district court lacked diversity jurisdiction under 28 U.S.C. § 1332.[1] She argues that the Bank did not meet its burden of establishing that the amount in controversy exceeded $75,000. "We review de novo a district court's determination that diversity jurisdiction exists." *Breitman v. May Co. Cal.*, 37 F.3d 562, 563 (9th Cir. 1994). The factual determinations necessary to establish diversity jurisdiction are reviewed for clear error. *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987).

[1] Where, as here, "the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $[75],000." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002). The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). When the amount is not "facially apparent" from the complaint, "the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy

---

[1] 28 U.S.C. § 1332(a)(1) provides, in relevant part, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

at the time of removal.' " *Singer*, 116 F.3d at 377 (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

Here, Kroske's complaint alleged that "she suffered and continues to suffer economic and emotion [sic] injuries and other damages, with specific amounts to be proven at the time of trial." In response to the Bank's interrogatories, Kroske further identified the following categories of damages: lost wages, benefits including but not limited to health and mental insurance, 401(k) contributions, value of life insurance policies, stock options, and emotional distress damages, as well as attorney's fees and costs. Kroske did not, however, allege the amount of damages or fees she sought.

**[2]** In determining the amount in controversy, the district court properly considered Kroske's interrogatory answers and emotional distress damage awards in similar age discrimination cases in Washington. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). Based upon a preponderance of the evidence, the court concluded that Kroske's lost wages amounted to at least $55,000, that her 401(k) contribution amounted to at least $1000, and that her emotional distress damages would add at least an additional $25,000 to her claim. Therefore, even without including a potential award of attorney's fees, the district court found that the amount in controversy exceeded $75,000. This finding was not clearly erroneous; diversity jurisdiction properly exists in this case.

## III. Preemption

Kroske contends that the district court erred in concluding that her age discrimination claim under the WLAD, Wash. Rev. Code § 49.60.180, was preempted by the National Bank Act. The National Bank Act provides that a national bank shall have the power "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds

of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure*, and appoint others to fill their places." 12 U.S.C. § 24(Fifth) (emphasis added). Kroske concedes that she was appointed and terminated by the board of directors and does not challenge the district court's determination that she was an "officer" under 12 U.S.C. § 24(Fifth). Kroske contends, however, that the district court erred in determining that her state law age discrimination claim is preempted by the dismiss-at-pleasure provision of § 24(Fifth). We agree.

"We review a district court's grant of summary judgment de novo." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003). Further, federal preemption is an issue of law, which we review de novo. *Id.*

### A.

Under Article VI of the Constitution, the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, it is axiomatic "that state law that conflicts with federal law is 'without effect.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

Federal law may preempt state law under the Supremacy Clause in three ways. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). First, Congress may state its intent through an express preemption statutory provision. *Id.* at 78-79. Second, "in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79.

> Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make rea-

sonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.* (alterations in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Finally, state law that actually conflicts with federal law is preempted. *Id.* "Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and quotation omitted). In considering whether any of these three categories of preemption apply, however, " '[t]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." *Cipollone*, 505 U.S. at 516 (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).

**[3]** Further, "[w]here federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n.8 (1997) (internal quotations omitted); *Rice*, 331 U.S. at 230. The presumption of non-preemption does not apply, however, "when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000); *see also Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005). Here, although we recognize that there is a significant federal presence in the regulation of national banks, *see Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002), WLAD was enacted pursuant to the State's historic police

powers to prohibit discrimination on specified grounds. *See* Wash. Rev. Code § 49.60.010. Thus, we begin with the presumption that Congress did not intend the National Bank Act to preempt the WLAD. *Cf. PG&E Co. v. California*, 350 F.3d 932, 943 (9th Cir. 2003) (holding that presumption against preemption of generally applicable state law applies in bankruptcy area); *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328-29 (11th Cir. 2001) ("Although the federal government through the ICCTA has legislated in an area where there has been a history of significant federal presence, . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation." (footnote, citation and quotation omitted)).

### B.

The at-pleasure provision of § 24(Fifth) is part of the scheme of federal laws governing the duties and powers of federally chartered banks. "Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 . . . (1819), creating an extensive federal statutory and regulatory scheme." *Bank of Am.*, 309 F.3d at 558. The purpose of this scheme was "to facilitate what Representative Hooper termed a 'national banking system,' " *Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299, 315 (1978) (footnote and citation omitted), and "to protect national banks against intrusive regulation by the States," *Bank of Am.*, 309 F.3d at 561. Accordingly, the history of national banking law is "one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law." *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 32 (1996).

**[4]** Nonetheless, "[s]ince shortly after the Bank Act was enacted in 1864, the Supreme Court has oft reiterated that federal substantive authority over national banks is not exclusive." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 963

(9th Cir. 2005) (citation and footnote omitted). Rather, "regulation of banking has been one of dual control [with the states] since the passage of the first National Bank Act." *Nat'l State Bank v. Long*, 630 F.2d 981, 985 (3d Cir. 1980). Accordingly, federal banking statutes and regulations do not "deprive States of the power to regulate national banks, where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank*, 517 U.S. at 33. State laws regulating the conduct of national banks are void only "if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties." *Bank of Am.*, 309 F.3d at 561; *see also Barnett Bank*, 517 U.S. at 33-37 (holding that a federal statute granting national banks authority to sell insurance conflicts with and therefore preempts state law forbidding banks from selling insurance); *Franklin Nat'l Bank v. New York*, 347 U.S. 373, 377-79 (1954) (holding that national banks' power to receive deposits conflicts with and therefore preempts a state statute prohibiting use of the word "savings" in banking advertisements); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 248-49 (1944) (holding that a state statute providing for transfer of abandoned bank deposits was not preempted because "national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on them").

In light of the historic dual regulation of banks by state and federal law, we conclude that the district court erred in determining that the dismiss-at-pleasure provision of the National Bank Act preempts the entire field of law governing national banks' employment practices. Indeed, the at-pleasure provision is not accompanied by a pervasive regulatory scheme that governs the dismissal of bank officers, " 'the mere volume and complexity' " of which "demonstrate[s] an implicit congressional intent to displace all state law." *Bank of Am.*, 309 F.3d at 558 (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000)). Rather, the National Bank Act simply contains one undefined clause—"dismiss such officers or any

of them at pleasure." 12 U.S.C. § 24(Fifth). This clause does not reflect that Congress's clear and manifest purpose was preemption of the entire field of state law.

We therefore must determine the intended purpose and scope of the at-pleasure provision and, given that scope, whether the WLAD "conflict[s] with federal law, frustrate[s] the purposes of the National Bank Act, or impair[s] the efficiency of national banks to discharge their duties." *Bank of Am.*, 309 F.3d at 561.[2] The meaning and scope of the at-pleasure provision is not defined by statute, regulations, or legislative history. In fact, the only evidence of congressional intent regarding the purpose and scope of the National Bank Act provision is provided by case law.

An early leading case addressing the at-pleasure clause explained the purpose of the provision as follows:

---

[2]In determining the intended scope of § 24(Fifth), we also consider the judicial constructions of the virtually identical dismiss-at-pleasure provisions in the Federal Reserve Act, 12 U.S.C. § 341(Fifth), and the Federal Home Loan Bank Act, 12 U.S.C. § 1432(a).

Under the Federal Reserve Act, a Federal Reserve Bank has the power "[t]o appoint by its board of directors a president, vice presidents, and such officers and employees as are not otherwise provided for in this chapter, to define their duties, require bonds for them and fix the penalty thereof, and *to dismiss at pleasure such officers or employees*." 12 U.S.C. § 341(Fifth) (emphasis added).

Similarly, under the Federal Home Loan Bank Act, the board of directors of each Federal Home Loan Bank has the power "to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the transaction of its business, to define their duties, require bonds of them and fix the penalties thereof, and *to dismiss at pleasure such officers*." 12 U.S.C. § 1432(a) (emphasis added).

Courts that have considered these provisions have interpreted them consistently with each other and with the at-pleasure clause of the National Bank Act. *See, e.g.*, *Mele v. Fed. Reserve Bank*, 359 F.3d 251, 255 (3d Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 394 (6th Cir. 2004); *Inglis v. Feinerman*, 701 F.2d 97, 98 (9th Cir. 1983).

> Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys. When it has once been secured, and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows. It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or a president of a bank, spreads through the community in which he lives, scares the depositors, and threatens immediate financial ruin to the institution. In such a case it is necessary to the prosperity and success—to the very existence—of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence. In our opinion, the provision of the act of congress to which we have referred was inserted, ex industria, to provide for this very contingency.

*Westervelt v. Mohrenstecher*, 76 F. 118, 122 (8th Cir. 1896). Thus, "[t]he original congressional intent behind the at-pleasure provision of the Bank Acts was to ensure the financial stability of the banking institutions by affording them the means to discharge employees who were felt to compromise an institution's integrity." Sharon A. Kahn & Brian McCarthy, *At-Will Employment in the Banking Industry: Ripe for a Change*, 17 Hofstra Lab. & Emp. L.J. 195, 215 (1999). Accordingly, courts uniformly have concluded that a bank's power to "dismiss at pleasure is analogous to dismiss at will, implying the absence of a contractual relationship between

employer and employee." *Katsiavelos v. Fed. Reserve Bank*, 1995 WL 103308, at \*2 (N.D. Ill. Mar. 3, 1995); *see also Mele*, 359 F.3d at 255; *Booth v. Old Nat'l Bank*, 900 F. Supp. 836, 843 (N.D.W. Va. 1995); *Mueller v. First Nat'l Bank*, 797 F. Supp. 656, 663 (C.D. Ill. 1992); *White v. Fed. Reserve Bank*, 660 N.E.2d 493, 496 (Ohio Ct. App. 1995); *Sargent v. Cent. Nat'l Bank & Trust Co.*, 809 P.2d 1298, 1303 (Okla. 1991).[3]

Similarly, we have concluded that the at-pleasure provision of the National Bank Act bars contract claims challenging a bank's dismissal of an officer. *See Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) (holding that § 24(Fifth) "has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ"). We further have concluded that "the National Bank Act raise[s] a defense to both . . . contract and tort claims." *Id*. at 525. In *Mackey*, we explained,

> it would make little sense to allow state tort claims to proceed, where a former bank officer's contract claims are barred by Section 24 (Fifth). The effect would be to substitute tort for contract claims, thus subjecting the national bank to all the dangers attendant to dismissing an officer. The purpose of the pro-

---

[3]One commentator has argued, however, that in light of the employment law principles that were in force at the time of the enactment of the National Bank Act, the courts have erred in concluding that the at-pleasure provisions were intended to render state contractual claims void. *See* M.B.W. Sinclair, *Employment At Pleasure: An Idea Whose Time Has Passed*, 23 U. Tol. L. Rev. 531 (1992). At the time Congress enacted the National Bank Act, "if an employment contract was not for a definite term, then it was presumed to be for a year." *Id*. at 540. Thus, the "original purpose of the 'at pleasure' language of the . . . National Bank Act was to enable banks to remove officers who otherwise would be entitled, by law, to remain at least until the end of the year." *Id*. at 541. According to this argument, as at-will employment became the norm, the at-pleasure provisions became superfluous. *Id*.

vision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust.

*Id.* at 526.

We also have held that the at-pleasure provision in the Federal Home Loan Act, 12 U.S.C. § 1432(a), bars state tort wrongful discharge claims. *See Inglis*, 701 F.2d at 97. In *Inglis*, we considered a wrongful discharge claim based upon the California law exception to at-will termination under *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330 (Cal. 1980). *Inglis*, 701 F.2d at 99. We held that the plaintiff's claim, which alleged that "the reason for his termination was his insistence that the Bank conform its practices to federal law," was preempted by the Federal Home Loan Act, 12 U.S.C. § 1432(a). *Id.*; *see also Bollow v. Fed. Reserve Bank*, 650 F.2d 1093 (9th Cir. 1981) (holding that Federal Reserve Bank employee's claims alleging a right to a hearing before termination under state law conflicted with and were preempted by the at-pleasure provision in 12 U.S.C. § 341(Fifth)).

We again addressed a bank's authority to dismiss a bank officer under an at-pleasure provision in *Walleri v. Fed. Home Loan Bank*, 83 F.3d 1575 (9th Cir. 1996). In *Walleri*, we concluded that the Federal Home Loan Bank Act at-pleasure provision, 12 U.S.C. § 1432(a), preempted a state wrongful discharge claim alleging that the bank wrongfully terminated the plaintiff because she prepared a report critical of the bank's lack of compliance with the federal banking laws. *Walleri*, 83 F.3d at 1578-79, 1582. We also held that Walleri's emotional distress claim was preempted. Although we recognized that the bank's power to dismiss "at pleasure" would not "necessarily preempt[ ] claims based on an employer's wrongful act directed at the employee outside of the employment relationship . . . , the conduct complained of [in the plaintiff's emotional distress allegations] relate[d]

solely to the employment relationship." *Id*. at 1582. We therefore affirmed the dismissal of the emotional distress claim, concluding "[w]hen § 1432(a) vested power in the Federal Home Loan Banks to 'select, employ, and fix the compensation of . . . [their] employees . . . to define their duties . . . and to dismiss [them] at pleasure . . .' it left no room for oversight under state law over the manner in which that power is exercised." *Id*. (alterations in original).

## C.

In light of our past holdings delineating the preemptive scope of the banking laws' dismiss-at-pleasure provisions, the Bank argues that § 24(Fifth) also preempts Kroske's claim under the WLAD. To support this contention the Bank cites the Sixth Circuit's ruling in *Leon v. Fed. Reserve Bank*, 823 F.2d 928 (6th Cir. 1987). In *Leon*, the Sixth Circuit concluded that the Elliott-Larsen Act, Michigan's anti-discrimination statute, Mich. Comp. Laws Ann. §§ 37.2101-.2804, was preempted by the Federal Reserve Act's at-pleasure provision, 12 U.S.C. § 341(Fifth). *Leon*, 823 F.2d at 931. With little analysis of the issue, the court concluded that the at-pleasure provision "preempts any state-created employment right to the contrary," including the plaintiff's claim under the state anti-discrimination law. *Id*; *see also Arrow*, 358 F.3d at 393 (applying *Leon* and holding that a state anti-discrimination claim was preempted).

**[5]** We disagree with the Sixth Circuit's summary conclusion that state anti-discrimination statutes enacted under a state's police powers are preempted by the banking laws simply because they are part of a general category of "state-created employment right[s]." Unlike the cases involving state common law employment claims, here we are confronted with a state statute prohibiting discrimination, which is modeled after and incorporated into the federal anti-discrimination laws. Thus, federal preemption of the WLAD must be considered in light of Congress's enactment of relevant federal

employment discrimination laws and the cooperative state-federal anti-discrimination scheme.[4]

Federal anti-discrimination statutes are relevant to our inquiry because federally chartered banks are not exempt from liability under these laws. *See Cooper v. Fed. Reserve Bank*, 467 U.S. 867 (1984) (holding that members of a class of black employees of a Federal Reserve Bank could maintain separate actions against the bank under Title VII); *see also* Enforcement Guidance on Coverage of Federal Reserve Banks, EEOC Decision No. N-915-002 (1993) (concluding that Federal Reserve Banks are not executive agencies and are covered by Title VII, the ADEA, the Equal Pay Act ("EPA"), and the Americans with Disabilities Act ("ADA") as private employers). Indeed, courts that have addressed the issue consistently have held that banks are subject to liability for discrimination under federal anti-discrimination laws irrespective of the bank's right to dismiss an officer (or employee) "at pleasure." *See, e.g.*, *Leon*, 823 F.2d at 931 (noting that plaintiff could have brought her discrimination claim

---

[4]We note that in *Moodie v. Fed. Reserve Bank*, 831 F. Supp. 333, 337 (S.D.N.Y. 1993), the district court similarly rejected the Sixth Circuit's holding in *Leon*, 823 F.2d at 932. In *Moodie*, the district court concluded,

> [n]othing in the plain language of [12 U.S.C.] § 341[, which authorizes Reserve Banks to dismiss certain officers and employees "at pleasure,"] supports the Bank's view that Congress intended that section to exempt the Federal Reserve Banks, in the area of employment discrimination, from statutes or regulations of the states in which they operate, particularly when the state statutory scheme is consistent with federal legislation.

831 F. Supp. at 337. The court held that "[t]he New York State Human Rights Law, with provisions analogous to Title VII, creates no additional employment rights in conflict with the Bank's status as an employer at will, nor does it place additional constraints on the Bank's exercise of its statutory powers." *Id.*; *see also Moodie v. Fed. Reserve Bank*, 835 F. Supp. 751, 753 (S.D.N.Y. 1993) (denying motion to reargue motion for summary judgment, concluding that "Congress did not intend 12 U.S.C. § 341(5) to preempt state anti-discrimination laws that are consistent with federal anti-discrimination legislation").

under Title VII); *Diniz v. Fed. Reserve Bank*, 2004 WL 2043127, at *2 (N.D. Cal. Sept. 13, 2004) (holding that the Federal Reserve Bank may be sued for violations of Title VII); *Mueller*, 797 F. Supp. at 663 (holding that § 24(Fifth) does not bar a discrimination claim under the ADEA).

Here, because Kroske has alleged age discrimination under the WLAD, we are particularly concerned with the congressional intent expressed in the enactment of the ADEA, which prohibits discrimination in employment on the basis of age. *See* 29 U.S.C. § 623. The ADEA is part of "an ongoing congressional effort to eradicate discrimination in the workplace, [and] reflects a societal condemnation of invidious bias in employment decisions." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357 (1995). Accordingly, the ADEA shares a common purpose with Title VII,[5] the paramount federal anti-discrimination statute: to eliminate discrimination in employment and to remedy the effects of such discriminatory conduct. *Id.* at 358. Because the anti-discrimination laws are part of a consistent remedial scheme, "[t]he substantive, anti-discrimination provisions of the ADEA are modeled upon the prohibitions of Title VII." *Id.* at 357; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

[6] The anti-discrimination provisions of the ADEA conflict with the banks' authority to dismiss officers "at pleasure." As a result, we must give effect to the congressional intent expressed in the ADEA by limiting the power granted to banks through § 24(Fifth). We recognize that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). We have held, however, that § 24(Fifth) grants banks "the greatest latitude possible to hire

---

[5]Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2.

and fire their chief operating officers." *Mackey*, 867 F.2d at 526. In light of the broad power extended to banks to dismiss officers "at pleasure" without limitation, we are not able to harmonize § 24(Fifth) with the ADEA's prohibition against discrimination.

Rather, we conclude that the two provisions are in irreconcilable conflict with regard to the banks' power to dismiss an officer on the basis of age. "There is no ambiguity as to the nature of the remedial scheme Congress enacted in [the ADEA], and that scheme simply cannot work if [§ 24(Fifth)] is allowed to operate concurrently." *Kee Leasing Co. v. McGahan (In re Glacier Bay)*, 944 F.2d 577, 583 (9th Cir. 1991). Although "repeals by implication are not favored," *Morton*, 417 U.S. at 549 (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497 (1936)), where " 'provisions in the two acts[, such as the provisions at issue,] are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one.' " *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (quoting *Posadas*, 296 U.S. at 503).

**[7]** However, when, as here, "two statutes are partially in conflict, '[r]epeal is to be regarded as implied . . . only to the minimum extent necessary.' " *In re Glacier Bay*, 944 F.2d at 582 (first alteration in original) (quoting *Silver v. N.Y. Stock Exch.*, 373 U.S. 341, 357 (1963)). We therefore conclude that the dismiss-at-pleasure provision of § 24(Fifth) is repealed by implication only to the extent necessary to give effect to the ADEA; accordingly, the authority to dismiss officers "at pleasure" does not encompass the right to terminate an officer in a manner that violates the prohibitions against discrimination enumerated in the ADEA.

**[8]** It follows that the provision of the WLAD prohibiting age discrimination does not conflict with the at-pleasure provision of the National Bank Act. The WLAD provides that it is an unfair practice for any employer "[t]o discharge or bar

any person from employment because of age." Wash. Rev. Code § 49.60.180(2). This provision mirrors the substantive provisions of the ADEA and is interpreted consistently with the ADEA. *See Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 926 n.1 (9th Cir. 2003) ("Washington's Law Against Discrimination tracks federal law . . . ."); *Grimwood v. Univ. of Puget Sound, Inc.*, 753 P.2d 517, 520 (Wash. 1988) (holding that because Wash. Rev. Code § 49.60.180 "does not provide any criteria for establishing an age discrimination case," Washington courts look to federal cases construing the ADEA). Thus, in the absence of clear congressional intent to the contrary, we hold that Kroske's claim of age discrimination under the WLAD is not preempted by § 24(Fifth), as limited by the ADEA.[6] *Cf. Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101-06 (1983) (holding that state anti-discrimination laws are not expressly preempted by ERISA insofar as they are consistent with Title VII); *Aloha Islandair Inc. v. Tseu*, 128 F.3d 1301, 1303 (9th Cir. 1997) (concluding that state disability law is not preempted by the Airline Deregulation Act based, in part, on the fact that pilots are not exempt from the Americans with Disabilities Act).

---

[6]We note that the California Court of Appeal reached a similar conclusion in *Marques v. Bank of Am.*, 69 Cal. Rptr. 2d 154 (Ct. App. 1998). Relying on principles of repeal by implication, the court concluded, "[s]ince, under federal law, a national bank may no longer exercise the power to dismiss at pleasure an officer who can show her termination was discriminatory, state antidiscrimination statutes prohibiting such terminations are not preempted." *Id.* at 159. Similarly, in *Peatros v. Bank of Am., NT & SA*, 990 P.2d 539 (Cal. 2000), the California Supreme Court concluded that Title VII and the ADEA impliedly amended the National Bank Act and therefore § 24(Fifth) "grants a national bank a limited power to dismiss any of its officers at pleasure by its board of directors, not extending to dismissal on the ground of race, color, religion, sex, national origin, or age." *Id.* at 551. Thus, "[a]s impliedly amended by Title VII and the ADEA, section 24, Fifth, preempts [California's Fair Employment and Housing Act] to the extent that it conflicts, but it does not to the extent that it does not." *Id.* at 540.

Our conclusion is buttressed by the "importance of state fair employment laws to the federal enforcement scheme." *Shaw*, 463 U.S. at 102. Certainly, "many States look to Title VII[, the model for the ADEA,] as a matter of course in defining the scope of their laws." *Id.* at 106. Moreover, parallel state anti-discrimination laws are explicitly made part of the enforcement scheme for the federal laws. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755-56 (1979); *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 n.1 (9th Cir. 1994). Not only does the ADEA disclaim any preemptive effect on state laws, *see* 29 U.S.C. § 633(a), it also incorporates consistent state anti discrimination laws to serve as the primary enforcement mechanism of the enumerated rights, *see id.* §§ 626(d)(2), 633(b).

Indeed, the ADEA, like Title VII, provides that, in states with anti-discrimination laws that prohibit the conduct the complainant alleges, the state administrative agency has exclusive jurisdiction over a charge of discrimination for the first sixty days after the charge is filed. *See id.* § 633(b); *see also Oscar Mayer & Co.*, 441 U.S. at 755 (stating that § 14(b) of the ADEA, 29 U.S.C. § 633(b), was "patterned after and is virtually in *haec verba* with § 706(c) of Title VII," 42 U.S.C. § 2000e-5(c)). Congress intended for these provisions "to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in 'a voluntary and localized manner.' " *Id.* (quoting 110 Cong. Rec. 12725 (1964) (remarks of Sen. Humphrey)). They were "intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination." *Id.*

Here, Kroske brought her suit under the WLAD, which, pursuant to the State's police powers,

> declares that practices of discrimination against any of [Washington's] inhabitants because of race, creed,

color, national origin, families with children, sex, marital status, *age*, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

Wash. Rev. Code § 49.60.010 (emphasis added). It further creates the Washington Human Rights Commission, a designated Fair Employment Practices ("FEP") agency under 29 C.F.R. § 1601.74, and grants the agency general jurisdiction and necessary "powers with respect to elimination and prevention of discrimination." Wash. Rev. Code. § 49.60.010.

Specifically, as discussed, Kroske alleges that the Bank terminated her in violation of the WLAD, *id.* § 49.60.180(2), which provides that it is an unfair practice for any employer "[t]o discharge or bar any person from employment because of age."[7] This provision is consistent with the substantive provisions of the ADEA and plays an integral role in the enforcement of the federal anti-discrimination scheme. *See Oscar Mayer & Co.*, 441 U.S. at 756. The nature of the collaborative

---

[7]Wash. Rev. Code § 49.44.090 further provides, in relevant part:

It shall be an unfair practice (1) For an employer or licensing agency, because an individual is forty years of age or older, to refuse to hire or employ or license or to bar or to terminate from employment such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment: PROVIDED, That employers or licensing agencies may establish reasonable minimum and/or maximum age limits with respect to candidates for positions of employment, which positions are of such a nature as to require extraordinary physical effort, endurance, condition or training, subject to the approval of the executive director of the Washington state human rights commission or the director of labor and industries through the division of industrial relations.

anti-discrimination scheme and the WLAD's function in it supports our conclusion that Kroske's age discrimination claim, which is substantively the same as a claim of age discrimination under the ADEA, is not preempted by the Bank's power to dismiss officers "at pleasure" under § 24(Fifth).

We are mindful, however, of Congress's intent to create a national banking system with "uniform and universal operation through the entire territorial limits of the country." *Talbott v. Bd. of Comm'rs*, 139 U.S. 438, 443 (1891). We therefore recognize that state law prohibitions against discriminatory termination that are not consistent with federal anti-discrimination laws may frustrate the congressional purpose of uniform regulation reflected in the National Bank Act. Nonetheless, the fact that some state law provisions prohibit termination on grounds that are more expansive than the grounds set forth in federal law does not undermine our conclusion that Kroske's age discrimination claim under the WLAD, which substantively mirrors a claim under the ADEA, is not preempted. *Cf. Shaw,* 463 U.S. at 101-06 (holding that New York's Human Rights Law is not preempted under ERISA insofar as it prohibits practices that are covered under Title VII).

**[9]** In sum, we conclude that the congressional enactment of the ADEA has placed limits on the Bank's authority to dismiss officers "at pleasure" under § 24(Fifth). In light of the ADEA's prohibition against age discrimination and the integral role of state anti-discrimination laws in the federal anti-discrimination scheme, we conclude that Congress did not intend for § 24(Fifth) to preempt the WLAD employment discrimination provisions, at least insofar as they are consistent with the prohibited grounds for termination under the ADEA. Thus, Kroske's claim of age discrimination under the WLAD is not barred.

## IV.   Conclusion

We conclude that diversity jurisdiction is proper. We also conclude that Kroske's age discrimination claim under the

WLAD is not preempted by the National Bank Act. We therefore reverse the district court's grant of summary judgment in favor of U.S. Bank Corp. and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.